**UNITED STATES DISTRICT COURT**
*SOUTHERN DISTRICT OF NEW YORK*

*RONALD G. TAYLOR,*                                )
*ROSE M.TAYLOR*                                    )
                                                   )
    *Plaintiffs,*                            )
                                                   )
*CITY OF NEW YORK,*                                )
*New York City Police Department,*                 )
*Det, Tarah Barrett, Shield # 2277*                )
*Sgt. Juan Ortiz Shield #05606 all*                )
*John Doe and Jane Doe operatives of*              )
*the New York City Police Department*              )
*in connection with the May 9, 2014,*              )
*encounter, which is set forth at*                 )
*length herein, all John Doe and*                  )
*Jane Doe operatives in connection*                )
*with the May 24, 2014 encounters*                 )
*with the New York City Police*                    )
*Department, which is set forth at*                )
*length herein, all John and Jane*                 )
*Doe operatives of the New York City*              )
*Police Department in connection*                  )
*with the November 5, 2014 encounter*              )
*which is set forth at length*                     )
*herein, New York City Housing*                    )
*Authority, Patrick Chan,*                         )
*individually and his official*                    )
*capacity within the New York City*                )
*Housing Authority, Aralyn Mason*                  )
*individually and in her official*                 )
*capacity within the New York City*                )
*Housing Authority, Renee Wright,*                 )
*individually and in her official*                 )
*capacity within the New York City*                )
*Housing Authority, New York City*                 )
*Human Resources Administration,*                  )
*Department of Adult Protective*                   )
*Service, all John Doe and Jane Doe*               )
*operative of the Human Resources*                 )
*Administrations, Adult Protective*                )
*Services Division up to and*                      )
*including the individual who*                     )
*purported to be a psychiatrist on*                )
*November 5, 2015 and the John Doe and*            )
*Jane Doe Police Officers*                         )
         *Defendants*               )
                                                   )

*DOCKET No.15-CV-1536*
*(PAC) (JCF)*

AMENDED COMPLAINT AS OF
FEBRUARY 21, 2016



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/1/16

## *PRELIMINARY STATEMET*

We ask for the Courts indulgence, with regard to any further time sensitive filings, as we are at a clear disadvantage which the Court is aware of on a number of fronts. Despite our pleas to this court to level proverbial playing field, which this Court does have the power to do; however, it has repeatedly declined which further fuels the Defendants overwhelming advantage on top of the obvious advantages and edges that it already has over the Plaintiffs, by in essences sanctioning and our condoning the Defendants extra unconstitutional activity by its silence. Not only are we deemed a minority in some sector of society, we are also disabled, powerless, injured, infirmed and weak. I am not a constitution scholar nor am I familiar with the science of law, as maybe it could be deemed an admission if the Court Ordered the defendant to cease and desist from the covert, illegal activity which we prayed and prayed for relief, which we have fully support with hard factual undisputable evidence in our pleadings to date. In addition, as previously stated in our pleadings and further supported with documentary evidence that I am Plaintiff Rose M. Taylor's primary care giver and a new treatment was implemented on February 17, 2016 that requires constant monitoring; therefore once again, a little extra liberty if my filings that are time sensitive might be delayed as this Plaintiff and writer could be fatigued from not only addressing Plaintiff Rose M. Taylor medical conditions but also

from keeping vigilance over Ms. Taylor's apartment as it has not
been secured since May 24, 2014 in the forced no-knock entry
breach by the Defendant New York City Police Department's
operatives in a move to enhance the narcotics arrested of May 9,
2014 which the office of the Special Narcotics Prosecutor
declined to prosecute as it clearly did not want to discolor its
reputation as it was clear that the undercover operatives
operated outside of the color of law and even fudged the
Charging Affidavit.  As being a master chess player I've learned
since the age of eight (8) to anticipate and or foresee the
moves of my opponent that would cause havoc and to strategical
avoid and evade checkmate and in this case since it is not a
game and an extremely serious matter that requires serious
attention as peoples life are one the line; more particularly,
that of the Plaintiffs. In addition, I'm troubled, as I sure
based on the ease that these NYPD narcotics operatives operated
within the confines of Robert Fulton Houses to target Plaintiff
Ronald G. Taylor and even offered "contracts to a person who I
discounted what I was being told until once again my attention
was captured as the same terminology was used "contract" as as
defendants Barret and Ortiz repeatedly used the same word
"contract" to me both on May 9, 2014 and also on May 24, 2014.
The individual that I have alluded to was subsequently
repeatedly threatened for noncompliance. Therefore, as a
humanitarian, I am troubled by all who have come in contact with

this particular narcotics unit as there isn't any doubt in my fifty-seven (57) year old mind that people are suffering as a result of being unjustly incarcerated.  Furthermore, the reprehensible actions perpetrated on this plaintiff and writer Ronald G. Taylor when I was assaulted knocked to the floor for trying to rendered aid to my eight five (85) year old mother who was in distress. When I regained my composure I placed a 911 call for a patrol supervisor to respond; however it is my firm belief that it was quashed by the two NYPD operatives based upon their subsequent tone and tenor when questioned about the patrol supervisor's response by the by a John Doe and Jane Doe NYPD operatives that acted in concert and was orchestrated by the Defendant New York City Adult Protective Services. I will not go in to the dirty tricks perpetrated to date at this time but it's quite alarming and plays on one's psyche. We the Plaintiffs Rose M. Taylor and Ronald G. Taylor are ensconced in battle with the most powerful City in the world, the City of New York and as such it has the ability to cross-pollinate its other agencies. All it takes is for sick a minded person of power, with a proverbial bee in his or her shorts and a grudge to once again set off a proverbial fire storm. Plaintiffs, Rose M. Taylor and Ronald G. Taylor sustaining injury for which this Plaintiff and writer is still suffering from when the stove in Ms. Taylor apartment exploded from a gas line rupture in which the Defendant New York City Housing Authority was noticed, well over

one (1) year ago, inspected and took no action whatsoever; however, once again the Defendant New York City Housing Authority retaliated against Plaintiff Rose M. Taylor by not fulfilling its legal obligations. One of the most cherished rights that a renter has which is to withhold rent *pursuant to* Real Property Law §235-b. when the landlord refuses to make repairs has been total extinguished, by this diabolical well contrived plan by Defendant New York City Housing Authority scheme; in addition, to the psychological trauma which caused Plaintiff Ronald G. Taylor to seek out professional psychiatric assistance as reliving all of these encounters, none of which his conduct was culpable. The psychological trauma which includes but not limited to Plaintiff Ronald G. Taylor being setup to be falsely arrested on two (2) separate occasions on narcotics related violations, none of which the Office of the Special Narcotics Prosecutor of the City of New York would entertain or better yet prosecute, being forcibly cavity searched in the anus etc. etc..

### ***OPENING STATEMENT***

1) *This* action *is for Civil Rights Violations, which resulted in False Imprisonment, Abuse of Power, Physical Torture, Psychological Torture, Mental Anguish, Computer Hacking, Wire Fraud, Negligence, Pain and Suffering, Psychological Trauma, Retaliation, Perjury, Material*

Breach and Malfeasance all from New York City Agencies which are installed to protect and serve. Let it be known to this Honorable Court and all others who comes in to contact with these moving papers as the Plaintiffs have discovered through a proverbial baptism of fire and actual near death experiences that what Plaintiff Rose M. Taylor a disabled eighty-four (84) year old senior citizen and this writer Plaintiff Ronald G. Taylor endured and continues to endure to date should not have ever occurred, but did and unless lashes are handed down by this Court and notice is strongly served upon the City of New York and its operatives that we as Americans must respect, honor and abided by the Constitution of our land and not have proceeded as if Black people (The Plaintiffs) are enemy combatants by remove the strong, disrupting communications, assaults, disrupting and seizing finances, intercepting US Postal Mail addressed to the Plaintiffs etc. etc. Plaintiff Ronald G. Taylor is requesting protection from the Federal Government as notice has been served on him that he is a target of the New York City Police Department, that on February 7, 2015 what is believed to be an undercover NYC operative captured on film eavesdropping and texting at the apartment door of Plaintiff Rose M. Taylor which remains

damaged for which the New York City Housing Authority refuses to repair, as a direct result of the May 27, 2014 encounter with the Defendant New York City Police Department; wherein, it made forced entry; in addition, in further support of my assertions, on May 5, 2015 two uniformed officers appeared at Plaintiff Rose M. Taylor's officers from the Defendant New York City Police Department wanted her, when Plaintiff Ronald G. Taylor questioned them as to why, I Ronald G. Taylor was informed that the "Office of the Chief of Detectives sent them as Ms. Taylor was a victim of domestic violence. In addition; Plaintiff Ronald G. Taylor calls on the Federal Government to examine all of the activities up to and including arrests and incarceration of all individuals that have come  in contact with this Special Narcotics Unit as there isn't any doubt in this writer's fifty-six (56) year old mind that a number of innocent people have been incarcerated based on lies, manufactured evidence, perjury and other illegal activity as was used on this Plaintiff Ronald G. Taylor; furthermore, I am sure based on the ease of the operations set forth at length herein that I am not the first person that this Special Narcotics Unit has setup. This illegal activity occurs so

often that the Unit has developed a catch phrase

"flaked". (as in flakes of cocaine).

In addition, Plaintiff Ronald G. Taylor has a person at bay

that is willing to come forward and give supporting

testimony that money and drugs was made by Narcotics

Detectives to give to me Ronald G. Taylor. I initially I

discounted what the person said until she used a buss word

"contract" this word "contract"  was expressed to me also

in exchange for considerations. I had no one to give up as

I Ronald G. Taylor have never been involved with narcotics

trafficking or has ever knowingly associated with anyone

involved narcotic traffic of any type whatsoever in my

entire life. In addition, plaintiffs are seeking redress

under 42 U.S. Code §3616 Fair Housing Act

## JURISDICTION AND VENUE

2) This action is brought under 42 U.S.C section 1983 in

conjunction with the fourth, eighth and fourteenth

Amendments to the United States Constitution and the

Constitutional, Statutory and the Common laws of the

State of New York in addition to 42 U.S. Code §3616 Fair

Housing Act;

3) Jurisdiction is invoked herein pursuant to the

aforementioned statutory and Constitutional provision and

pursuant to 28 U.S.C sections 1331 and 1343 this being an

action seeking redress for Constitutional Civil Rights violations.

4) Plaintiffs further invokes this Courts pendant jurisdiction over any and all State law, claims and Causes of Action which derive from the same nucleus of operative facts that give rise to this Federally based claims and causes of action pursuant to 28 U.S.C. 1367;

5) Venue is laid within the United States District Court in and for the Southern District of New York;

6) Plaintiffs demand a trial by jury on each and every one of the claims pleaded herein; venue is laid within the United States District Court in and for the Southern District of New York;

7) Plaintiffs demand a trial by jury on each and every one of the claims pleaded herein.

## PARTIES

8) At all relevant times herein Plaintiff Ronald G. Taylor was and still is a resident of the City, State and County of New York;

9) At all relevant times herein Plaintiff Rose M Taylor was and still is a resident of the City, State and County of New York;

10) At all relevant times hereto, Defendant New York City was and still is a municipality organized under the laws of

*the State of New York and owns operates, manages, directs
and controls the New York City Police Department, the New
York City Housing Authority, City of New York Human
Resources Administration Adult Protective Services, and
directly employs all of the John and Jane Doe Defendants
and all other individually named Defendants;*

## FACTUAL BACKGROUND

11) *Plaintiff Rose M. Taylor took possession of apartment 3-E
at 420 west 19th Street, in the City of New York from the
New York City Housing Authority on or about December 5,
1995, as a direct result of the settlement action filed
in the United States District Court, in and for the
Southern District of New York under Docket  Number
90 Civ. 0628 (RWS) entitled  Pauline Davis et al –
against– The New York City Housing;*

**12)** *The apartment mentioned in paragraph "11)"was totally
uninhabitable at the time the defendant New York City
Housing Authority relinquished possession to Plaintiff
Rose M. Taylor; as waste water (raw sewage)  from the
Defendant New York City Housing Authority (hereinafter
NYCHA) would funnel its way from the basement and
discharge directly into Plaintiff Rose M. Taylor's*

apartment flooding her apartment out multiple times
daily;

13) Plaintiff Ronald G. Taylor complained of the issue set
forth in paragraph "12)" to the Defendant "NYCHA" for
approximately eight "8" years; as Rose M. Taylor has
designated Ronald G. Taylor to have her Power of
Attorney. The "NYCHA" would deny, deny and deny; one lie
after another lie until such time as plaintiff Rose M.
Taylor was seriously injured as a direct result of the
aggravated issue mentioned in paragraph "12):. Plaintiff
Ronald G. Taylor came to discover based on first hand
encounters that the "NYCHA" employs some of the best
liars known to mankind since time immemorial, who's
employees are devoid of any human compassion towards
mankind; in fact, the "NYCHA" which the Plaintiffs has
interacted with over the course of time would go to the
extent that Plaintiff Ronald G. Taylor is concocting and
or creating this entire event for his personal monetary
gain;

14) As part in parcel of the most recent nefarious
retaliation on the part of the "NYCHA" since the
settlement of the "Davis Consent Decree" in United Stated
District Court  Plaintiffs Rose M. Taylor and Ronald G.
Taylor were severely injured when the stove in Ms.

Taylor's apartment which the "NYCHA" was noticed, on or about February 12, 2012, caused an emergency response of the New York City Fire Department, New York City Emergency Medical Service and two Con Edison gas teams which Red Flagged the stove and photographed the rotted out gas line which subsequently shut the gas leading to the stove. To date, defendant "NYCHA" has not cured the situation, inspected or remedied this aggravated matter; in fact, Ms. Taylor is unable to prepare hot meals to date, as there isn't any gas as a direct result of the action taken by Con Edison;

15) Plaintiff Rose M. Taylor with the assistance of her son Plaintiff Ronald G. Taylor commenced a rent action to against defendant "NYCHA" in calendar year 2003;

16) On or about July 9, 2003 Defendant New York City Housing Authority commenced a nonpayment action against Plaintiff Rose M. Taylor in New York City Landlord Tenant Court under Index No. 13427/03;

17) In Calendar year 2003 Plaintiff Rose M. Taylor Pro Se countered with the assistance of her son Ronald G. Taylor commenced an action in New York State Supreme Court under Index No. 400747/2003 captioned Rose M. Taylor v. New York City Housing Authority as she was injured as a direct result of the Negligence of the Defendant the New

York City Housing Authority. Index No. 400747/2003
settled for well over One Hundred Thousand Dollars
($100,000.00);

18) Subsequently the Defendant "NYCHA" through its operatives
at Robert Fulton Houses has set out on a covert campaign
to inflict pain and suffering, hardship on the Plaintiff,
Ronald G. Taylor and Rose M. Taylor in the form of
retaliation through a variety of means up to and
including falsifying documents, computer hacking,
manipulation of Government agency, material malfeasance
surveillance to collect and maintain a portfolio   ,
remove and incarcerate Plaintiff Ronald G. Taylor as he
is an intimidating strong factor and stands clearly in
the way of the' "NYCHA" as it prays on the sick, weak and
infirmed; as by removing Ronald G. Taylor from the
equation it can bring Plaintiff Rose M. Taylor to her
knees, to beg for mercy;

19) Notice was served on the "NYCHA that rent is being
withheld as a direct result of its retaliation in the
form of failing to address and effect life threating
repair and correct hazardous conditions associated with
Plaintiff Rose M. Taylor's domicile;

20) The "NYCHA" as opposed to addressing the aggravated
issues moved before Justice Schriber in New York City

Landlord Tenant Court; during the preceding Justice
Schriber orders the New York City Adult Protective
Services to make an assessment of Plaintiff Rose  M.
Taylor;

21) On April 11, 2014 New York City Adult Protective Services
finalized and submitted its findings to the New York City
L&T Court, which did not find any inequities whatsoever;

22) In the following L&T proceeding, which reflects the
aforementioned submission to the L&T Court, as Ms. Taylor
was making her way to the judicial bench to be heard, it
was observed by this Plaintiff and writer Ronald G.
Taylor as it was awfully clear to the entire open Court
that an operative from the defendant "NYCHA" assigned to
Robert Fulton Houses was clearly whispering with greatest
of ease into the ear of Justice Schriber, as if they are
buddies;

23) It took Plaintiff Rose M. Taylor approximately three (3)
to four (4) minutes  as a result of ambulation issues to
make her way to the judicial bench;

24) At the start of the aforementioned proceeding Justice
Schriber ordered yet a second assessment by New York City
Adult Protective Services of Plaintiff Rose M. Taylor,
apparently the Defendant "NYCHA" and Justice Schriber was
not satisfied with the first assessment by New York City

Adult Protective Services as it did not conform to the scheme of things;

25) Plaintiff Rose M. Taylor was fully prepared and armed with extremely hard factual evidence which was ready for submission at this so-called hearing to advance and support a sustainable Warranty of Habitability Defense *pursuant to* Real Property Law §235-b. and expressed the same to Justice Schriber, in that Ms. Taylor  wanted to move this matter forward;

26) Justice Schriber then bristled and with shaking of fists acrimony stated "the only way to move this forward is to **PAY THE RENT"**;

27) It was at that juncture notice was served by making it perfectly clear by Justice Schreiber's actions and words that this so-called judicial proceeding in her Courtroom is nothing more than a sham and is just going through the motions of being a fair and impartial hearing; furthermore, this was only the beginning of Justice Schriber squashing and steamrolling Plaintiff Rose M. Taylor's Right to a Fair and Impartial trail/hearing. In addition, the only cases that  Justice Schriber is believed to hear is  "NYCHA" cases thus she has become wayyyyy too cozy as stated herein as she is allowing

petitioners to whisper directly in her ear in Open Court. **WOW**;

28) Shortly thereafter; Plaintiff Rose M. Taylor suffered a traumatic head injury and was hospitalized when an overhead kitchen cabinet door in her apartment which the Defendant "NYCHA" was noticed months, inspected which only required a simple  screw to fix, however, it failed to take corrective action;

29) Now comes Jacquelyn Reed (New York City Adult Protective Services) operative to give defendants Justice Schriber and the "NYCHA" the desired results it sought from the item mentioned in paragraph No. "24";

30) On July 23, 2014 Jacquelyn Reed  once again who is an operative of Defendant New York City Adult Protective Services appears at the home of Plaintiff Rose M. Taylor;

31) Plaintiff Ronald G. Taylor informed Ms. Reed just prior to her conducting this so-called interview that her presence is being video and audio recorded as it was clear to the Plaintiffs and they wanted to make it extremely clear to a jury and everyone else to understand the terror that this agency Defendant New York City Human Resources Administration, Adult Protective Services is intentionally inflicting;

32) Ms. Reed, immediately removed herself from within the scope
of the video equipment; however, she was not out of the range
of the audio equipment and stated that she would not conduct
her interview in view of recording devices;

33) What Ms. Reed didn't relies is that although she was off the
aperture of the video camera  her audio was captured;

34) At a subsequent L&T hearing, New York City Adult Protective
Services states that this writer Ronald G. Taylor is impeding
its investigating;

35) Justice Schriber states that they are only trying to help
your mother and directs New York City Adult Protective
Services to go into the proper judicial area and seek an
Order that can force the psychiatric evaluation;

36) On November 5, 2014 Rose Andrews, an operatives of New York
City Adult Protective Services appeared with a person who
purported to be a psychiatrist employed by the City of New
York ordered Plaintiff Rose M. Taylor to submit to a
psychiatric examination and moves to convince Plaintiff
Ronald G. Taylor that she has an appropriate Court Order;

37) Plaintiff  Ronald G. Taylor requested that operative Andrews
produce this Court Order as neither one of the Plaintiffs was
ever summoned in to appearing for a hearing that would
command such an action;

38) Operative Andrews from the Defendant New York City Adult Protective Services read some gobbledygook to deceive and convince the Plaintiffs Rose M. Taylor and Ronald G. Taylor that what they are doing is Just and Proper,

39) Plaintiff Ronald G. Taylor requested that operative Andrews, turnover the Order that  charged her with power to force a psychiatric examination;

40) Plaintiff Ronald G. Taylor was shocked, astonished and amazed upon perusing and internalizing the so-called Order she was alluding to, that is was executed by a Landlord Tenant Judge and moves to disabuse Andrews from her asinine position;

41) Upon examination of the item mentioned in paragraph No."40)" it became extremely clear that Rose Andrews from Defendant New York City Adult Protective Services and this so-called psychiatrist that what New York City Adult Protective Services are intentionally trying to deceive and or mislead the Plaintiffs as what they are perpetrating and is highly illegal and is in direct conflict with Ms. Taylor's Rights as an American; more particularly, but not limited to N.Y. MHY. LAW § 9.27, they reiterated "we have a "Court Order" signed by Justice Schriber;

42) Plaintiff, Ronald G. Taylor then quickly came to the conclusion  that these two New York City operatives cannot be

as ill-advised as they are projecting or be that senseless
and hold a civil service job; therefore, they are
intentionally violating the Rights of Plaintiff Rose M.
Taylor as they are knowingly and continually moving in
concert as part of the campaign that Defendant New York City
Housing Authority put into play on May 9, 2014;

43) Plaintiff Ronald G. Taylor then advised the NYC operatives so
that is perfectly clear and they cannot use as a defense that
we thought we were acting under the color of law as an L&T
Judge does not have the authority to hand down such type of
an Order and that they are clearly violating plaintiff Rose
M. Taylor's Rights; however, just prior to the NYC operatives
exiting the apartment Plaintiff Rose M. Taylor's apartment
made it extremely clear that she does not want the City of
New York in her life;

44) Plaintiff Rose M. Taylor stated to the operatives from the
New York City Adult Protective Services for the umpteenth
time that she want them out of her life and at that juncture
Plaintiff Ronald G. Taylor removed them form Ms. Taylor's
domicile;

45) On November 5, 2014 the same two operatives from New York
City Adult Protective Services mentioned in paragraph No.
"36" left and returned this time with two (2) unformed
officers from the New York City Police Department;

46) Once again Ms. Taylor told all of the operatives from New
York City Government that she declines the psych examine and
wants them all out of her apartment;

47) The male "John Doe" police officer informed Plaintiff Rose M.
Taylor if she did not submit to the Court Order and allow the
exam that she would be removed to Bellevue Hospital and this
propertied psychiatrist then commenced his examine of
Plaintiff Rose M. Taylor who was clearly in fear and  obvious
distress;

48) Plaintiff son Ronald G. Taylor seeing his mother in distress
and being a historian of her medical conditions and knowing
that this can spark a life threatening medical emergency for
his mother ordered that this cruel barbaric action cease
immediately as it was clear by their depraved indifference
towards other people's life's; more particularly, Plaintiff
Rose M. Taylor, tranquility and Human Rights moves to give
aid and comfort to his eight three (83) year old mother in
her apartment, the female police officers knocked Plaintiff
Ronald G. Taylor to the floor placed her hand on her weapon
in a threating posture and threatens him with arrest;

49) Plaintiff Ronald G. Taylor then placed a call into the 911
system requesting a patrol supervisor has he was just
assaulted once again by a New York City Police Officer's and
his mother Plaintiff Rose M. Taylor is being force to undergo

a psychiatric examination which is out of the scope of the law;

50) It is  Plaintiff Ronald G. Taylor's belief that the officers that he complained about and was captured in the recorded 911 call, canceled the response of the patrol supervisor as a supervising officer never responded and when Mr. Taylor confronted the male officer while he was  sitting in his radio motor patrol car he smiled and drove off from the location;

51) Plaintiff Ronald G. Taylor then made a formal complaint to the internal affairs unit of the New York City Police Department under log number 36976;

52) Plaintiff Ronald G, Taylor to the best of his knowledge believes that the complaint mentioned in paragraph No. "51)" died on the vine;

53) On November 13, 2014 Plaintiff Ronald G. Taylor hand delivered a letter to Justice Schriber and supervising Judge Kaplan at 111 Centre Street in New York City which set forth a number of improprieties in addition to the assault and forced psychological examination;

54) During yet another subsequent so-called hearing before Justice Schriber Plaintiff Ronald G, Taylor tried once again to speak and was not allowed to be heard as in each and every proceeding he has been squelched and ordered silent by

Justice Schriber and some of the Defendants set forth in this
Complaint where allowed to spew non truths, and pure and
utter lies which Justice Schriber embraced; however, Justice
Schriber would not embrace the truth from the get-go;

55) In lieu of all of the extremely oblivious issues that
Plaintiff Ronald G. Taylor tried to present to Justice
Schriber she still appoints Mr. Robert Peters (GAL) to
Plaintiff Rose M. Taylor in the L&T matter under Index No.
11069/2014;

56) Mr. Robert Peters, GAL., met with Ms. Taylor just days
before the next scheduled L&T hearing and our position was
made blatantly clear to Mr. Peter's the we want to mount a
Warranty of Habitability defense *pursuant to* Real Property
Law §235-b.;

57) Mr. Peters, with total disregard to our position moved with
dispatch and obtained funds from defendant New York City
Human Resources Administration to satisfy defendant "NYCHA"
financial demand;

58) At the very next hearing Mr. Peters presents to Justice
Schriber checks to satisfy the "NYCHA" demand;

59) Plaintiff Ronald G. Taylor vehemently objected to the payment
mentioned and presented cash that would address the demand as
money was not or has ever been an issue; however, once again
Plaintiff Ronald G. Taylor was Ordered silent and ignored and

Justice Schriber moved to satisfy the "NYCHA" demand by
stipulation of settlement with the checks that Mr. Peters
collected from the New York City Human Resources
Administration Department of Social Services;

60) On May 9, 2014 plaintiff Ronald G. Taylor discovered that his
computer connected to Plaintiff Rose M. Taylor's router  was
acting as if it was being operated remotely;

61) Upon investigating the issue mentioned in paragraph No. "60)"
Plaintiff Ronald G. Taylor discovered, documented and
preserved that Defendant New York City Housing Authority was
connected directly in to Plaintiff Rose M. Taylor's  locked
and secured router;

62) During that aforementioned incursion of the computer
mentioned in paragraph No."60)"  Plaintiff Ronald G. Taylor
was having privileged electronic communications with his
attorney Daniel F. Lynch, Esq. as he had an appointment to
meet with him; however, since Plaintiff Ronald G. Taylor was
under the weather a subsequent electronic transmission gave
an approximate time that Mr. Taylor would be leaving Ms.
Taylor's home to address a legal business matter via Western
Union as opposed to meeting with Mr. Lynch at his office;

63) Shortly thereafter Plaintiff Ronald G. Taylor exited
Plaintiff Rose M. Taylor place of residence and  was
approached by a unknown white female who greats him by name

"Ron" in front of 420 West 19th Street in New York City and asked "how have you been";

64) The first stop that was on Plaintiff Ronald G. Taylor itinerary was to pick up medication for his mother plaintiff Rose M. Taylor and vitamins for himself at Chelsea Royal Care Pharmacy, which is located directly across the street from the aforesaid address, then fulfil a commitment to Daniel F. Lynch, Esq. via Western Union  and finally to pick up dinner for Ms. Taylor and return to her home;

65) Upon exiting Chelsea Royal Care Pharmacy Plaintiff Ronald G. Taylor was confronted once again by the same unknown white female mentioned in paragraph No. "63)" who engages him in conversation and goes on to express how hungry she is and hasn't eaten in days;

66) Plaintiff Ronald G. Taylor was curious as to how this female knew him and deviated from his itinerary to explore the connection further;

67) Plaintiff Ronald G. Taylor diverts from itinerary this time with the unknown female tagging along goes into Pizza shop on the corner of West 19th Street, which is also across the street from Ms. Taylor residence  and buys a pizza pie for dinner and returns to Ms. Taylor residence, with the unknown female accompanying him;

68) During the dinner the unknown (who name escapes me) female
   whispers into Plaintiff Ronald G. Taylor's ear simultaneously
   extending her right hand revealing a white powdery substance
   and says get some of this so that we can party and pulls out
   a large sum of currency. This was from a person who purported
   to be hungry;

69) Plaintiff Ronald G. Taylor told his mother Plaintiff Rose M.
   Taylor to excuse us and I removed the female from the
   premises;

70) Upon reinterring 420 west 19th Street Plaintiff Ronald G.
   Taylor was speaking to a social contact, for a moment; as I
   was walking towards Ms. Taylor's residence, this unknown
   female tries once again to place currency in to my hand.  I
   stated to her "what the fuck is wrong with you" her response
   was "I am Bipolar" I then reentered 420 West 19th Street and
   was tackled from behind by a number of people who
   subsequently turned out to be New York City Police Narcotics
   Detectives. It was later revealed that the unknown female was
   an undercover New York City Police Detective. It should be
   further noted that at no time whatsoever was marked money or
   narcotics ever exchanged by and between plaintiff Ronald G.
   Taylor and this unknown white female;

71) The unknown white (undercover) female in an apparent attempt
   moved to get the support and backing of the others including

the Office of the Special Narcotics Prosecutor swore in her charging affidavit that on May 9, 2014  I used my Apple I Phone to procure narcotics on her behalf;

72) Plaintiff Ronald G. Taylor purchased directly from T-Mobile USA, Inc. on May 1, 2014 an Apple I Phone. **TAKE NOTICE**  this is the first and only Apple I Phone the Plaintiff Ronald G. Taylor ever owned at the time; (the significance of the is going to be revealed in the forthcoming paragraphs;

73) Plaintiff was subsequently arrested on narcotics related charges and turned over to the New York City Department of Corrections and lodged at the Tombs until bail was made;

74) The Apple I Phone was sized and interrogated for well over five (months) including a subpoena being sent to T-Mobile USA, Inc.

75) On or about May 15, 2014 Plaintiff Ronald G. Taylor obtained another Apple I Phone 5 S 64GB identical phone to the one that the New York City Police Department sized or better yet stole on May 9, 2014, through T-Mobile, USA, Inc.;

76) Upon syncing the phone mentioned in paragraph No."75)" for the very first time on  May 15, 2014, it pulled off data in the synchronization process in the form of text messages from the phone sized on May 9, 2014 or better yet stolen by the New York City Police Department on May 9, 2014 which preceded that the of date of acquisition;

77) Apparently while the Apple I Phone mentioned in preceding paragraphs  was in the care, custody and control of the New York City Police Department someone who had access to the phone moved to booster or better yet enhance the May 9, 2014 arrest evidence;

78) Plaintiff Ronald G. Taylor once again was communicating electronically disclosing what he uncovered as to tampered evidence on the phone which was preserved and will be introduced that was going to be used by Defendant New York Police Department  to booster and or enhance the already fabricated he evidenced sized in the May 9, 2014 arrest that Mr. Taylor is trafficking narcotics;

79) Shortly thereafter, Plaintiff Ronald G. Taylor received a call from Defendant "NYCHA" on telephone number 212-851-6247 a telephone number which no one had at the time not even Plaintiff's mother Rose M. Taylor as it was just assigned;

80) On May 24, 2014 the very same arrest made a no knock breach into Plaintiff Rose M. Taylor's home at approximately 0530 Hrs.;

81) During the incursion mentioned in this section the very same narcotics team of May 24, 2014 planted a variety of narcotics related drug paraphernalia and removed the 2nd Apple I-Phone that was amongst four other inoperative cell phones;

82) On May 24, 2014 Plaintiff Ronald G. Taylor was arrested once
   again, this time for narcotics related paraphernalia and also
   for ARM AND HAMMER PURE BAKING SODA for which I witnessed the
   black female narcotics detective open up the refrigerator
   took out a box of "ARM AND HAMMER PURE BAKING SODA" that has
   been in the refrigerator for over four "4" years, pour some
   of the contents out into a coffee lid walk out of the kitchen
   and said "look sarg jackpot" a bogus field test was allegedly
   preformed and I was arrested once again;

83) On May 24, 2014 Plaintiff Ronald G. Taylor told the Sgt. that
   I just seen what was stated in the aforementioned paragraph;

84) The response of the Sgt. was "get that piece of shit the fuck
   out of here"

85) Plaintiff Ronald G. Taylor made perfectly clear to the
   undercover narcotics detective when he introduce the
   undercover to his mother on May 9, 2014 prior to this
   incursion of May 24, 2014 that his mother suffers we dementia
   and also to marauding jackbooted thugs that his mother need
   assistance and their response was "say another fucking word
   and I'll punch you right in your fucking mouth right in front
   of your mother fucking mother" and removed Plaintiff from the
   apartment rear cuffed;

86) On May 24' 2014 Plaintiff Ronald G. Taylor pleaded with the detectives to get medical aid as it was clear that Ms. Taylor was in medical distress, they refused;

87) On May 24, 2014 Plaintiff Ronald G. Taylor was placed in a black unmarked NYPD prisoner van rear cuffed and driven at high rates of speed all around the borough of Manhattan with the vehicle breaks being deliberately slammed to inflicted pain and suffering as the repeated made emergency deployment of the brakes, thus causing Plaintiff Ronald G. Taylor to propelled through air by gravity. When Plaintiff Ronald G. Taylor  asked for medical aid he was told by the unknown Hispanic Det. "nobody has ever died in the back of my van now shut the fuck up";

88) Apparently, the same unit had another operations ongoing throughout the City;  this one in particular  was further North of Ms. Taylor's residence;

89) The individual that Special Narcotic Unit of the New York City Police Department arrested in this particular operation which is cited in paragraph "88)" based on information obtained and a review of the arrest record sold **toilet paper, yes a shopping bag full of TOILET PAPER** to an undercover operative of the New York City Police Department; this is what I almost lost my life over. This is just one of the incidences that I almost lost my life over in the back of

this prisoner van  as I was once again being propelled by
gravity;

90) It is plaintiff Ronald G. Taylor's firm belief based on the
three (3) other individuals arrested during the torturous
ordeal in the rear of this prisoner van on May 24, 2014 from
approximately 0530 Hrs. to approximately 1300 Hrs.  and all
evidence reports that I was made privy to, that what the
entire operation of this the Special Narcotics Unit yielded
was two (2) ten (10) dollar bags of crack cocaine from other
individuals and a shopping bag full of toilet paper from
another;

91) On May 24, 2014 Plaintiff Ronald G. Taylor appeared before
the Judge and was released on his own recognizance. It is
Plaintiff Ronald G. Taylor's belief that even the Judge found
this the second event somewhat problematic;

92) On May 24, 2014 Plaintiff Rose M. Taylor was discovered in
the proximity of 14th Street and 8th Avenue scantily dressed
at approximately 2345 Hrs. when she was questioned as to
what's going on, her response was. "I'm looking for Ron". The
person who came across Ms. Taylor returned her to her
residence;

93) On October 31, 2014 under Docket Number 2014NY036821 Justice
Ferrara called the plaintiff Ronald G. Taylor forward and
informed him that the people decline to prosecute this case

as it cannot be substantiated and it is now Dismissed and Sealed;

94) The second action which is under 2014NY040455 has been **Dismissed and Sealed** on July 24, 2015;

95) On or about June 16, 2014 (Ronald G. Taylor's birthday) Plaintiffs Rose M. Taylor and Ronald G. Taylor answered a letter from the Defendant 'NYCHA" authored by Patrick Chan, Property Manager at Robert Fulton Houses; wherein, the sum and substance of the letter was that he is going to commence an action to regain possession of the apartment in question as a direct result of narcotic related offense and sex and morals offences. Wow NYCHA has never ceases to amaze this writer; not only is it try to substantiate a lie which it orchestrated and cross-pollinated other New York City agency with, it has introduces in own charging papers items that NYPD didn't even include, in other words it introduced more fabricated charges in to the already fabricated charges from the May 9, 2014 and May 24, 2014 "NYPD" encounters;

96) The Plaintiffs moved in its response Mr. Chan's letter of June 16, 2014 to invoke the United States Constitution; more particularly, the eighth and fourteenth Amendments and highlighted "**the presumption of innocence and innocence until proven guilty;**

97) Apparently Mr. Chan "NYCHA" has no regard whatsoever nor does he recognize by his actions the United States Constitution as he moved as if he was a dictator with the proverbial speed of sound to eradicate Plaintiff Rose M. Taylor a disabled senior citizens who is recovering from an emergency heart related procedure and hospitalization, to the mean streets of New York;

98) On October 6, 2014, Plaintiff Rose M. Taylor received notification from the Defendant "NYCHA" that it is moving forward through an Administrative Complaint to regain possession of her domicile, to be held at its  headquarters located at 250 Broadway in New York City and that the Defendant has appointed  Roberta Arnone as Guardian ad litem to Plaintiff Rose M. Taylor;

99) On November 7, 2014 a "NYCHA" Administration hearing was held; present was the Plaintiffs herein Ronald G. Taylor along with his mother Rose M. Taylor also present was Roberta Arnone, Esq.  and two "2" other Jane Doe operatives from "NYCHA", Plaintiff Ronald G. Taylor just wanted to see once again how far the "NYCHA" is prepared to go with this malarkey. Mr. Taylor asked the presiding Administrative Law Judge how can the "NYCHA" substantiate its Complaint which is based solely on the NYPD charging affidavit, which the District Attorney couldn't substantiate,  her response was

"remember the O.J. Simpson trial just because he was found not guilty in the criminal matter he was found guilty in a Civil Trial. It was at that juncture notice was further served on the Taylors,  that the "NYCHA" is moving to substantiate a lie. Plaintiff Ronald G. Taylor also made it clear to all of the legal scholars in the room and illustrated that the "NYCHA" is unclean; however, it is still moving and failed to dismiss its administrative action;;

100) On November 7, 2014 Roberta Arnone, GAL who is appointed by the Defendant "NYCHA" had a moment with Plaintiff Rose M. Taylor when her son Ronald G. Taylor made a visit to the "NYCHA" restroom;

101) Plaintiff Ronald G. Taylor upon returning found his mother in clear state of hysteria and distress only to find Arnone orally installing fear in to Plaintiff Rose M. Taylor, with the sum and substance of her diatribe being that it would be easier on Plaintiff Rose M. Taylor to give-up the apartment of over fifteen (15) years and that your son has placed you in this situation and I'm ( Arnone) will assist you in getting in to a nursing home so that you can be safely away from your son. Plaintiff Ronald G. Taylor upon witnessing this immediately interrupted and removed Ms. Taylor as she was in clear distress from this subterfuge. It became further apparent that Defendant Arnone is nothing more than a puppet

and or better yet a shill and acting in concert with
Defendant "NYCHA" as the "NYCHA" appointed her; furthermore,
Defendant Arnone's; proverbial stock with Defendant "NYCHA"
would go up by get Ms. Taylor out of her apartment, as that
is the prime object of this entire matter;

102) It was recently discovered during a telephonic conversation
that Plaintiff Ronald G. Taylor had with Robert Peters, Esq.
& GAL and from electronic transmissions by and between
Plaintiff Ronald G. Taylor, Robert Peters, Esq. & GAL and
Roberta Arnone, Esq. & GAL that an attempt was made to engage
Mr. Peters to act in concert with Arnone so that they are
aligned in the scheme of this nefarious plot; however, Mr.
Peters neutrality infuriated Arnone;

103) A cursory review by Plaintiff Ronald G. Taylor and Rose M.
Taylor (who are not attorneys) of the charging complaint of
"NYCHA" clearly shows that it has introduced even more
fabricated evidence into its own Charging Complaint to remove
Ms. Taylor from, her domicile, even more than New York City
Police Department set forth in its fabricated Charging
Affidavit which the Office of the Special Narcotics
Prosecutor could not even substantiate and which the Judge
Order Dismissed and Sealed;

104) Defendants, New York City Department of Social Services,
New York City Police Department and the New York City Adult

Protective Services  all have entered it to the nefarious scheme or have been cross-pollinated by the Defendant New York City Housing Authority to trample or better yet totally squash the rights that we embrace as Americans; to be perfectly clear, I'll In the words of Justice Thomas, this is nothing more than a high tech lynching; more **importantly,  in the words of Justice Louis D. Bradieis, who left us on October 5, 1941 said the right to be left alone by government is the most cherished of rights. (What the Taylor's have been ensconced in for well over a year now would have Justice Brandies rolling over in his grave as it is in direct contradiction to his perception of rights;**

**105)** Plaintiff Ronald G. Taylor in calendar year 2014 petitioned the New York State Supreme Court Pro Se under Index No. 400390/14 for the Appointment of Guardianship to his mother Rose M. Taylor;

106) Plaintiff Ronald G. Taylor argued before the Hon. Lottie E. Wilkins in support of his Petition and interjected that one of the reason is that we are at conflict with the "NYCHA" and it is necessary for this Petition be So Ordered to protect my mother from harm;

107) On May 13, 2014 the Hon. Lottie E. Wilkins, Denied the Petition under Index No. 400390/14 and stated the following therein "Motion denied, it is clear from the hearing that the

AIP Rose M. Taylor is being well taken care of by her son and a guardian is not necessary;

**108)** Plaintiff Ronald G. Taylor re-petitioned the New York State Supreme Court Pro Se under Index No. 500031/15, for the Appointment of Guardianship to his mother Rose M. Taylor;

109) On March 17, 2015 Index No. 500031/15 a closed door hearing was held and the Hon. Lottie E. Wilkins was once again the presiding judge;

110) Upon canvassing Justice Wilkins Courtroom I was able to identify each and every person in the Courtroom as I have served them all in accordance to Judge Wilkins Order with Notice; however, there was one person in the audience which was unknown to this writer however I vaguely recall seeing this unknown person before as I was being led away in handcuffs in a remote section of the 3rd floor hallway in the building where plaintiff Rose M. Taylor resides om May 24, 2014;

111) I requested that this unknown person make herself known, Justice Wilkins Ordered this unknown person to stand and identify herself. The unknown person identified herself as Kimberly Wong, Esq. Ms. Wong is an operative of the Defendant "NYCHA" had no reason whatsoever to be in my closed door hearing. Justice Wilkins had her remove herself from the Courtroom. At the conclusion of the hearing Ms. Wong

reappeared and quickly cross-pollinated Justice Wilkins
mindset with subterfuge, thus contaminating the hearing with
pure malarkey so that an unfavorable decision for Mr. Taylor
will be handed down.

112)  Not only did Ms. Wong contaminate hearing she clearly
changed the was the Court viewed this Plaintiff Ronald G.
Taylor as it was obvious by the tone and tenor and body
language and also from what Justice Wilkins expressed after
Ms. Wong's appearance;

113) On or about May 13, 2015 Defendant New York City Housing
Authority indirectly served notice on the Supreme Court, New
York County under Index No. 500031/15 through Felice Wexler,
Attorney-In-Charge Mental Hygiene Legal Service,"NYCHA"
appeared to be willing to work with APS on getting repairs
and painting done and as long as the Taylors cooperated, it
should be accomplished." ""Mr. Catapano advised that APS's
position that if repairs were made and Ms. Taylor placed on
financial management APS saw no need for a guardian. Mr.
Catapano said that he was going to follow up with APS to see
if the repairs effectuated." It should be noted that
"painting" was not now or has ever been an issue raised in
the Warranty of Habitability Defense, *pursuant to* Real
Property Law §235-b. the issue of this "painting was created
by Robert Peters, Esq. & GAL;

114) Notwithstanding the foregoing paragraph, on May 15, 2015
Rose Andrews from Adult Protective Service and her trusty
cohort in tow appeared unannounced at Ms. Taylor apartment
after meeting with Mr. Chan at his office, apparently Mr.
Chan has turned Ms. Andrews into his personal messenger and
sent her out to do his bidding or better yet to pick up where
he left off; however, since he has introduced so much
malarkey it was clear that he couldn't keep track of your all
lies over the course of time or maybe his brain is going
soft. The allusion Mr. Chan was trying to project was that
the Plaintiffs where being uncooperative as they will not the
Defendant "NYCHA" in to fulfill its obligation to paint the
apartment;

115) Once again , On May 15, 2015 "NYCHA" operative Patrick
Chan, Property Manager of Plaintiff Rose M. Taylor's
development Robert Fulton Houses cross-pollinated Andrews and
her cohort  once again fully fueling them with his
subterfuge, just as he has fueled other government agencies;
however, this time Mr. Chan  failed to keep track of all of
the scenarios which he concocted and or manufactured in the
inner recesses of his sick, twisted, demented, evil,
malicious mind, as  Chan inadvertently exposed himself to Ms.
Rose Andrews as to what he really is a pure unadulterated
fabricator;

116) Ms. Andrews from Defendant "APS" advised the Plaintiffs
that Mr. Chan stated to her that we the Plaintiffs will not
let them (NYCHA) in to paint and wanted to know why we were
being so uncooperative; however, the Plaintiffs quickly
disabused Ms. Andrews with hard factual undisputable
evidence and further showing that the Plaintiff were
receptive and did allow the Defendant "NYCHA" in to Paint, in
fact Mr. Taylor singlehandedly moved each and every piece of
furniture in the apartment as instructed by the advance
painter to the center of the floor;

117) After approximately one (1) hour of paining the defendant's
operatives packed up their brushes and left the apartment
with dispatch after painting only one living room wall;

118)  It should be clearly understood by all who come in contact
with this Complaint that the issue of this painting is just
pure and utter subterfuge on the part of the Defendants; let
it be known   Plaintiff Rose M. Taylor nor Ronald G. Taylor
has never raised any issue whatsoever concerning painting of
the apartment or would that have ever been raised in
Plaintiff Rose M. Taylor's Warranty of Habitability Defense,
pursuant to Real Property Law §235-b. as this issue of this
paint it just to ancillary;

119) On or about October 19, 2011 Plaintiffs Rose M. Taylor and Ronald G. Taylor made a "Permanente Permission Request" submission to Defendant "NYCHA";

120) The submission mentioned in preceding paragraph was fielded by Aralyn Mason, Resident Services Associate, who is an operative of Defendant "NYCHA".

121) On or about October 24, 2011, Ms. Mason, requested in writing with a return date of November 10, 2011, additional production of documents to support the submission, which Plaintiff Ronald G. Taylor produced, in a timely manner;

122) On December 2, 2011, Plaintiffs Rose M. Taylor and Ronald G. Taylor received Ms. Mason decision concerning my "Permanente Permission Request", it was denied;

123) The reason set forth for the denial of the "Permanente Permission Request" was apparently two disabled persons, Rose M. Taylor and Ronald G. Taylor would cause an overcrowded condition;

124) What Ms. Mason failed to relies, as she was blinded by the contemptuous relationship and the animosity that the Defendant "NYCHA" maintains with the Plaintiffs on October 24, 2011 when she requested more production of supporting documents that she simultaneously executed and dated the rejection notice, which the property manager, Ms. Rene Wright executed;

125) On or about August 24, 2015 Plaintiff Ronald G. Taylor
discovered that the mail box associated with Plaintiff Rose
M. Taylor's apartment was tampered with,

126) On August 24, 2015 Plaintiff Ronald G. Taylor reported the
tampering to the Defendant "NYCHA" through its call center
which generated a work order under 38809173. Mr. Irizarry
inform Plaintiff Ronald G. Taylor to go to the Fulton
management office to execute the work order;

127) The document reference in the aforesaid paragraph was to
his ex-wife's apartment Elaine Williams;

128) The Defendant New York City Housing Authority clearly knew
through its operatives at Robert Fulton Houses by documents
they surreptitiously obtained prior to the divorce by and
between Elaine William and Ronald G. Taylor, which was So
Ordered by the Hon. Ellen Gesmer,JSC on January 12, 2011 was
farrrr from harmonious;

129) The Defendant "NYCHA" operatives clearly knew that there
skullduggery or better yet its creative deception, would
spark off a proverbial domestic fire storm by and between
Elaine Williams and Ronald G. Taylor if Plaintiff Ronald G.
Taylor didn't pay attention to the details in the work order;

130)  It is perfectly clear to the Plaintiffs by all of the
manipulation of computers; more particularly, the
manipulation of the Plaintiffs Rose M. Taylor and Ronald G.

Taylor's hard and software remotely on May 9, 2014 and the ease as to how person or persons manipulated mainframe od Defendant "NYCHA" with corruption that powerful forces are moving to extinguish Plaintiff Ronald G. Taylor.

## COUNT ONE: VIOLATION OF CONSITUTIONAL RIGHTS

**(all John Doe and Jane Doe Defendants mentioned at length in this Complaint of the New York City Police Department with regard to the May 9, 2014 arrest)**

131) Plaintiff repeats and realleges each and every allegation contained in paragraphs 1) through 130) of this complaint as though fully set forth for the very first time;

132) The actions of these John and Jane Doe Defendants of the New York City Police Department  acting under the color of State law deprived Plaintiff's Ronald G. Taylor and Rose M. Taylor of their Rights, privileges and immunities under the laws and Constitution of the United States of America; in particular, to secured in his or hers person and property, to be free from terrorist activity, to be free from malicious prosecution and to be free from illegal searches of residence as defined by the laws of our land;

133) By way of these despicable actions set forth herein at length, these jackbooted thugs who purport to be Police Officers of the City of New York deprived Plaintiffs Ronald G. Taylor and Rose M. Taylor of their Rights secured by and

not limited to the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C Sections 19;

## COUNT TWO: NEGLIGENCE
### (THE CITY OF NEW YORK)

134) Plaintiff repeats and realleges each and every allegation contained in all paragraphs 131) through 133) of this complaint as though fully set forth for the very first time;

135) Defendant The City of New York owned a duty to the Plaintiffs Rose M. Taylor and Ronald G. Taylor to adequately screen prospective employees, train, supervise and otherwise control all of the agencies mentioned in this Complaint and its operatives to include but is not limited to the use of excessive force, understanding the United States Constitution, integrity testing and understanding perjury.

## COUNT THREE: INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS
### (All Defendants)

136) Plaintiff repeats and realleges each and every allegation contained in paragraphs 133) through 135) of this complaint as though fully set forth for the very first time;

137) By way of the foregoing the Defendants entered into a campaign that would drive anyone insane; however, the Plaintiff are struggling to hold what sanity they have left

after all to the trials and tribulations which are set forth
at length in this entire Complaint;

### COUNT THREE: COMPUTER FRAUD AND ABUSE ACT

Defendants New York City Police Department New York City Housing Authority

138) Plaintiff repeats and realleges each and every allegation
contained in paragraphs 136) through 137) of this complaint
as though fully set forth for the very first time;

139) On May 9, 2014 Plaintiff Ronald G. Taylor discovered that the computer was acting in a
quirky manner as if it was being operated remotely;

140) During that aforementioned incursion May 9, 2014 incursion of the computer  Plaintiff
Ronald G. Taylor was having privileged electronic communications with his attorney
Daniel F. Lynch, Esq. as he had an appointment to meet with him; however, since Plaintiff
Ronald G. Taylor was under the weather a subsequent electronic transmission gave an
approximate time that Mr. Taylor would be leaving Ms. Taylor's home to address legal
business as opposed to meeting with Mr. Lynch in person;

141) Shortly thereafter Plaintiff Ronald G. Taylor exited Plaintiff Rose M. Taylor's building
and was approached by a female who greats him by name "Ron" in front of 420 West 19th
Street in New York City and asked "how have you been" this was from a person that he has
never seen or had any type of interaction with whatsoever; The first stop that was on
Plaintiff Ronald G. Taylor itinerary was to pick up medication for his mother plaintiff Rose
M. Taylor and vitamins for himself at Chelsea Royal Care Pharmacy, which is located
directly across the street from the Ms. Taylor's home, then fulfil a financial obligation to

Daniel F. Lynch, Esq. via Western Union and finally to pick up dinner for Ms. Taylor and

return to her home;

142) Upon exiting Chelsea Royal Care Pharmacy Plaintiff Ronald G. Taylor was confronted

once again by the same female mentioned in paragraph No. "125" who engages him in

conversation and goes on to express how hungry she is and hasn't eaten in days ;

143) Plaintiff Ronald G. Taylor was curious as to how this female knew him and deviated

from his itinerary to explore the connection further;

144) Plaintiff Ronald G. Taylor with the unknown female tagging along goes into Pizza shop,

which is also across the street from Ms. Taylor residence  and buys a pizza pie for dinner

and returns to Ms. Taylor residence, with the unknown female accompanying him;

145) During the dinner the unknown female whispers into Plaintiff Ronald G. Taylor's ear

simultaneously extending her right hand revealing a white powdery substance and says get

some of this so that we can party and pulls out cash. This was from a person who purported

to be hungry; Plaintiff Ronald G. Taylor ask for his mother Plaintiff Rose M. Taylor to

excuse us and I removed the female from the premises;

146) Upon reinterring 420 west 19th Street I was talked to a social contact, for a moment; as I

was walking towards Ms. Taylor's residence, this unknown female tries to put currency in

my hand.  I stated to her "what the fuck is wrong with you" her response was "I am

Bipolar" I then reentered 420 West 19th Street and was tackled from behind by a number of

people who subsequently turned out to be New York City Police Detectives. It was later

revealed that the unknown female was an undercover New York City Police Detective;

147) Plaintiff Ronald G. Taylor was transported to the 10th Police Precinct for processing;

148) While at the 10th Police Precinct Plaintiff since detective recover any narcotics whatsoever Narcotics Sgt. ordered two of the John Doe detective to "SS" and removed plaintiff to the bathroom and was ordered remove all off his clothing and bend over;

149) Plaintiff handcuffs were removed and he expressed that his humiliation and refused; it was at that juncture plaintiff was re-cuffed clothing forcibly removed, was bent over a toilet and his anal cavity was penetrated and probed looking for concealed narcotics which yielded negative results;

150) The unknown white (undercover) female in an apparent attempt moved to get the support and backing of the others including the Office of the Special Narcotics Prosecutor swore in her charging affidavit that on May 9, 2014 I used my Apple I Phone to procure narcotics on her behalf;

151) Plaintiff Ronald G. Taylor purchased directly from T-Mobile USA, Inc. on May 1, 2014 an Apple I Phone. **TAKE NOTICE** this was Plaintiff Taylor first and only Apple I Phone ever at the time; (the significance of the is going to be revealed in the forthcoming paragraphs;

152) Plaintiff was subsequently arrested on narcotics related charges and turned over to the New York City Department of Corrections and lodged at the Tombs until bail was made;

153) The Apple I Phone was sized and interrogated for well over five (months) including a subpoena being sent to T-Mobile USA, Inc. which yielded negative findings;

154) On or about May 15, 2014 Plaintiff Ronald G. Taylor
    obtained another Apple I Phone 5 S 64GB identical phone to
    the one that the New York City Police Department sized or
    better yet stole on May 9, 2014, through T-Mobile, USA, Inc.;

155) Upon syncing the phone mentioned in this section on  May
    15, 2014, it pulled off data in the synchronization process
    in the form of text messages from the phone sized on May 9,
    2014 or better yet stolen by the New York City Police
    Department on May 9, 2014 which preceded  that the of date of
    acquisition;

156) Apparently while the Apple I Phone mentioned in preceding
    paragraphs  was in the care, custody and control of the New
    York City Police Department someone who had access to the
    phone moved to booster or better yet enhance the May 9, 2014
    arrest evidence;

157) By way of these despicable actions set forth herein in this
    paragraph and the undisputable hard factual evidence that
    support each and every allegation herein, defendant New York
    City Police Department along with Defendant New York City
    Housing Authority is in clear violation of but not limited to
    18 U.S. CODE §1343;

## COUNT FOUR: VIOLATION OF THE FAIR HOUSING ACT
### New York City Housing Authority

158) Plaintiff repeats and realleges each and every allegation contained in paragraphs 138) through 157) of this Complaint as though fully set forth for the very first time;

159) On or about October 19, 2011 Plaintiffs Rose M. Taylor and Ronald G. Taylor made a "Permanente Permission Request" submission to Defendant "NYCHA";

160) The submission mentioned in preceding paragraph was fielded by Aralyn Mason, Resident Services Associate, who is an operative of Defendant "NYCHA".

161) On or about October 24, 2011, Ms. Mason, requested in writing with a return date of November 10, 2011, additional production of documents to support the submission, which Plaintiff Ronald G. Taylor produced, in a timely manner;

162) On December 2, 2011, Plaintiffs Rose M. Taylor and Ronald G. Taylor received Ms. Mason decision concerning my "Permanente Permission Request", it was denied;

163) The reason set forth for the denial of the "Permanente Permission Request" was apparently two disabled persons, Rose M. Taylor and Ronald G. Taylor would cause an overcrowded condition;

164) What Ms. Mason failed to relies, as she was blinded by the contemptuous relationship and the animosity that the

Defendant "NYCHA" maintains with the Plaintiffs on October 24, 2011 when she requested more production of supporting documents that she simultaneously executed and dated the rejection notice, which the property manager, Ms. Rene Wright executed;

165) By way of these disgraceful actions the Defendant New York City Housing Authority violated The Fair **Housing** Act as s codified at 42 U.S.C. §§ 3601 - 3619. as it crystal clear in its rejection letter that two disabled person who are related would create an overcrowded condition. The Permanente Permission Request was never fully vetted as it was immediately denied upon submission;

### COUNT FIVE: THEFT AND RECEIPT OF STOLEN MAIL
#### Defendant New York City Adult Protective Service

166) Plaintiffs repeats and realleges each and every allegation contained in paragraphs 158) through 165) of this complaint as though fully set forth for the very first and in further support;

167) On October 19, 2015, Plaintiff Rose M. Taylor returned to her place of residence from New York Presbyterian Hospital where underwent a hurtful computerized axial tomography;

168) Plaintiff Ronald G. Taylor while assisting his mother with her ambulation noticed a person shielded by a tree looking in

the direction of the Plaintiffs Rose M. Taylor and Ronald G.
Taylor;

169) As the Plaintiff Rose M. Taylor and Ronald G. Taylor
approached 420 West 19th Street Ms. Taylor place of residence
the person identity was revealed as Rose Andrews, an
operative from New York City Adult Protective Services;

170) Ms. Andrews confronted the plaintiffs and was advised be
plaintiff Ronald G. Taylor that his mother had underwent a
taxing medical test and needs not to be disturbed, Ms.
Andrews response was I have something to give you, therefore
Plaintiff Ronald G. Taylor granted access to Ms. Andrews;

171) At the conclusions of her investigation which was
precipitated by the surveillance set forth in paragraph No.
"168)" Ms. Andrews to Plaintiff Ronald G. Taylor's amazement,
reaches into her pocketbook and pulls out a huge stack of US
Postal Mail which was place in the care, custody and control
of the United States Postal Service addressed to the
Plaintiffs and turns it over to Plaintiff Ronald G. Taylor
with time sanative matters;

172) By these contemptible actions of Defendant New York City
Adult Protective Services which are set forth paragraphs
"167)-171)"deprived Plaintiffs Ronald G. Taylor and Rose M.
Taylor of their Rights in violation of but not limited to 18
U.S. Code § 1708;

## CLOSING STATEMENT

We are Pro Se litigants and as so we are not legal scholars nor
do we hold a doctorate in jurisprudence; however, what we do
hold is faith in God and faith in this honorable Court. We do
know right from wrong, good from bad and strongly believe that
some of the pleadings set forth herein warrants a criminal
investigation; as the City of New York has failed although
notice and the State of New York has also failed when noticed ;
and the Public Advocate's office turned a blind eye to the email
sent seeking help. It is obviously clear that the only way to
get her attention is to get killed, so she can make headlines.
To add insult to injury, November 5, 2014 Plaintiff Ronald G.
Taylor placed a call into the 911 system as he was just
assaulted by a female police officer and his mother is being
forced to undergo a psychiatric examination, needless to say but
I will anyway the patrol supervisor never responded. I filed a
complaint with the New York City Police Department, Internal
Affairs bureau under log number 36976. Once again this was not
investigated I evened filed a subsequent complaint with regard
to the May 9th 2014 incident people knocking on Ms. Taylor's
apartment door asking for drugs. The frequency that this is
occurring is has caused for us to capture pictures. This
narcotics unit works off of the grid using their personal cell
phones to communicate between each other thus there isn't any

true record. We are fearful that something extremely bad is going to happen to us as these corrupt cop set forth herein do not even think twice about committing perjury to lynch a black man; more particularly, Plaintiff Ronald G. Taylor. We are black Americans we are not enemy combatants; however we are treated as such i.e. removing the strong, disrupting communication, disrupting finances what's next I'm the victim of an accident. (We all know the words to that song by know) it is clear by the actions of the City of New York that these Defendants move with impunity. What I have learned from all of these encounters with the City of New York is that all it takes is for one person within a City agency with a demented mind to spew falsehoods and it triggers events with other New York City Agencies regards of the facts as it moves to support and backup the other City agency. **One New York City** agency will not go against another New York City Agency regardless of the circumstances. This is a sport or game to these people. I this writer Ronald G. Taylor has come to clearly understand what Justice Clarence Thomas meant when he said "this is nothing more than a high tech lynching.

**Once again, we are requesting protection from the Federal Government.**

WHEREFORE, Plaintiffs Ronald G. Taylor and Rose M. Taylor respectfully request that this Court:

(i)     Declare the practices complained about herein to
        be unlawful as they violated the Plaintiffs
        Constitutional Rights;

(ii)    Declare the actions on the New York City Housing
        Authority violated Plaintiffs Constitutional
        Rights;

(iii)   Declare the actions on the New York City Police
        Department violated Plaintiffs Constitutional
        Rights;

(iv)    Declare that actions of Defendant New York City
        Housing Authority violated the Fair Housing Act;

(v)     Declare that the New York City Police Department
        violated the Computer Fraud and Wire Act;

(vi)    Declare that the New York City Housing Authority
        violated the Computer Fraud and Wire Act;

(vii)   Declare that the New York City

(viii)  Declare that all of the Defendants herein set out
        to intentionally inflect emotional distress upon
        the plaintiffs Rose M. Taylor and Ronald G. Taylor

(ix)    Order Punitive Damages in the amount of Ten
        Million Dollars ($10,000,000.00)

    (x)    Order reasonable attorney fees should the
             Plaintiffs move to engage the services of an
             attorney;

    (xi)   Allow leave to amend this Complaint if need be and

    (xii)  Grant other relief that this Court deems just and
             proper.

Dated this 26th Day of February 2015

                                        Ronald G. Taylor.
                                        Co

                          Rose M. Taylor
                          420 W. 19th Street, 3-E
                          New York, NY 10011
                          212-851-6247

                          Rose M. Taylor
                          420 West 19th Street, 3-E
                          New York, NY 10011

TO:  David Ferrari, Esq.
     New York City Law Department
     Corporation Counsel
     100 Church Street
     New York, NY 10007

STATE OF NEW YORK        )

COUNTY OF NEW YORK       )

      RONALD G. TAYLOR and Rose M Taylor , being duly sworn, deposes and

says that: we are the Plaintiff of record in the within action; we have read

the foregoing complaint and know the contents thereof; the contents thereof

are true to the best of our knowledge, belief and ability except as to those

matters therein stated to be alleged upon information and belief, as to those

matters, I believe to be true to the best of my knowledge, based on

information and belief formed after an inquiry reasonable under the

circumstances. This presentation herein is not frivolous.

Dated this 28th day of February, 2015

New York, N.Y.

_____
RONALD G. TAYLOR
C/O
Rose M. Taylor
420 West 19th Street
Apartment 3-E
New York, N.Y. 10011
(212)851-6247

_____
Rose M. TAYLOR

420 West 19th Street
Apartment 3-E
New York, N.Y. 10011

_____

_____

Subscribed and sworn to before me
this 28th day of February, 2016

_____, Notary Public

ALEKSANDR ABDURAKHMANOV
Notary Public, State of New York
No. 01AB6143871
Qualified in Queens County
Certificate Filed in New York County
Commission Expires 04/17/2018

*RONALD G. TAYLOR,*
*ROSE M. TAYLOR*                                                    )
                                                                   )
         *Plaintiffs,*                                             )
                                                                   )
                                                                   )
*CITY OF NEW YORK,*                                                )
*New York City Police Department, all*                            )
*John Doe and Jane Doe operatives of*                             )
*the New York City Police Department in*                          )
*connection with the May 9, 2014,*                                )
*encounter, which is set forth at*                                )
*length herein, all John Doe and Jane*                            )
*Doe operatives in connection with the*                           )
*May 24, 2014 encounter with the New*                             )        *DOCKET No.15-CV-1536*
*York City Police Department, which is*                           )          *(PAC) (JCF)*
*set forth at length herein, all John*                            )
*and Jane Doe operatives of the New*                              )
*York City Police Department in*                                  )
*connection with the November 5, 2014*                            )
*encounter which is set forth at length*                          )
*herein, New York City Housing*                                   )
*Authority, Patrick Chan, individually*                           )
*and his official capacity within the*                            )
*New York City Housing Authority,*                                )
*Aralyn Mason individually and in her*                            )
*official capacity within the New York*                           )
*City Housing Authority, Renee Wright,*                           )
*individually and in her official*                                )
*capacity within the New York City*                               )
*Housing Authority, New York City Human*                          )
*Resources Administration, Department*                            )
*of Adult Protective Service, all John*                           )
*Doe and Jane Doe operative of the*                               )
*Human Resources Administrations, Adult*                          )
*Protective Services Division up to and*                          )
*including the individual who*                                    )
*purported to be a psychiatrist on*                               )
*November 5, 2014,*                                               )
         *Defendants*